IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TAJ GRAYSON, on behalf of himself and others similarly situated | * * * |
| v. | * Civil No. RWT 11-887 * |
| REGISTER TAPES UNLIMITED, INC. and REGISTER TAPES UNLIMITED, L.P. | * * * |

## REPORT AND RECOMMENDATION

This collective action arises under the Fair Labor Standards Act (FLSA). The underlying lawsuit was resolved on October 18, 2012, when the 39 Plaintiffs accepted Defendants' Offer of Judgment in the amount of $50,000. Presently pending is Plaintiffs' Motion for Attorneys' Fees and Costs. ECF No. 39. Plaintiffs request $101,745.75 in attorneys' fees and $1,768.15 in costs. ECF No. 39-2 at 1. Defendants do not dispute Plaintiffs' request for costs, but argue that Plaintiffs' attorneys' fees should not exceed $16,863.00. ECF No. 42 at 1. The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6.

Under the FLSA, successful plaintiffs are entitled to an award of reasonable attorneys' fees and costs. *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir.1992). The "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court may adjust this figure, known as the "lodestar" fee, based on certain factors used to assess whether the hours and rates are reasonable. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). These factors, originally set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), are as follows:[1]

---

[1] The Supreme Court recently criticized the *Johnson* approach, describing it as an "alternative" to the lodestar method and explaining that it gives too little guidance to judges by placing emphasis on considerations that are too

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* Appendix B of the Local Rules, entitled "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases," also provides guidance in this District.

### A. Enhancement of Fees

Plaintiffs' counsel seek an enhancement from the presumptive fee range set out in Appendix B of the Local Rules.[2] Such enhancements "may be awarded in rare and exceptional circumstances." *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672 (2010) (internal quotations omitted). A fee applicant bears the burden of proving that the enhancement is necessary and must do so with reference to "specific evidence that the lodestar fee would not have been adequate to attract competent counsel." *Id.* at 1674 (internal quotations omitted).

Defendants argue that an enhanced hourly rate for Plaintiffs' counsel is not justified because "[t]here was nothing exceptional or unique about Plaintiff's legal theory in this case."

---

subjective. *See Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672 (2010) ("[T]he lodestar method is readily administrable, and unlike the *Johnson* approach, the lodestar calculation is objective, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results."). However, "'the *Johnson* factors, as opposed to the *Johnson* method, are still relevant in informing the court's determination of a reasonable fee and a reasonable hourly rate'"; "'[*Perdue*] cautions against using a strict *Johnson* approach as the primary basis for determining reasonable attorneys' fees, but nowhere calls into question the idea of using relevant *Johnson* factors in helping to come to a reasonable fee.'" *Spencer v. Cent. Servs.*, LLC, 2012 U.S. Dist. LEXIS 4927 at *5-6 (D. Md. Jan. 13, 2012) (quoting *Jin v. Pac. Buffet House, Inc.*, 2010 U.S. Dist. LEXIS 63608 n.2 (E.D.N.Y. 2010) (internal citations omitted)).

[2] The firm Winebrake & Santillo, LLC is seeking compensation for 108.6 hours resulting in a total fee of $33,282.50. This includes work performed by Mr. Andrew Santillo, a junior partner at the firm, and Mr. Mark J. Gottesfeld, an associate at the firm. The firm Joseph, Greenwald & Laake is seeking compensation for 276.05 hours resulting in a total fee of $68,463.25. This includes work performed primarily by Mr. Brian J. Markovitz, a partner at the firm, Ms. Jamerra J. Cherry, a senior paralegal at the firm, and Matthew J. Augustyn and Ashley Sharif, two law clerks at the firm.

ECF No. 42 at 8. Plaintiffs insist that the requested rates, though higher than the presumptive rates in Appendix B, are reasonable because (1) Linda H. Thatcher, a local employment law attorney, attests that the requested rates are reasonable based on her experience; (2) the rates sought by Joseph, Greenwald & Laake are those actually charged to the firm's paying clients; and (3) counsel's declarations describe their extensive experience litigating employment matters in federal court. ECF No. 43 at 8.

The Supreme Court has emphasized that enhancements should be applied sparingly and in exceptional cases. *Perdue*, 130 S. Ct. at 1674-75. The legal theories underlying the present case are neither novel nor complex, nor is "the upper end of the lodestar range too low to attract competent counsel for cases such as these." *Spencer*, 2012 U.S. Dist. LEXIS 4927 at *10. Accordingly, Mr. Santillo's hourly rate should be reduced from $325 to $250, Mr. Markovitz's hourly rate should be reduced from $300-$350 to $300, the paralegal rate should be reduced from $130 to $115, and the law clerk rate should be reduced from $125 to $115. Accordingly, the initial lodestar figure proposed by Winebrake & Santillo should be reduced from $33,282.50 to $26,184.00 and the initial lodestar figure proposed by Joseph, Greenwald & Laake should be reduced from $68,463.25 to $62,974.25.

### B. Level of Success

Defendants argue that the court should adjust the award based on the relative lack of success attained by Plaintiffs. The Fourth Circuit considers "the extent of the relief obtained by the plaintiff to be particularly important when calculating reasonable fees" and instructs district courts "to weigh the amount in controversy and the results obtained before deciding upon a reasonable fee." *Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007). This "requirement rests on the idea that a prevailing plaintiff is less worthy of a fee award when

one or more of his claims lack merit—that is, when he cannot demonstrate that he deserves the compensation he demanded in his complaint." *Id.* Still, courts should "not reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall." *Id.* (citations omitted).

Here, 166 notices were sent to potential class members, and 39 joined the case. These 39 Plaintiffs recovered a settlement award of $50,000, settling for approximately 25% of counsel's estimated total unpaid wages of $206,000. ECF No. 37-2. The recovery is not so low in relation to what they sought as to render their victory merely technical. However, after settlement discussions did not result in an agreement, Defendants made an offer of judgment which Plaintiffs accepted. It would be appropriate here to reduce the lodestar amount by 10% to account for the relative number of opt-in Plaintiffs as well as the level of success attained and the procedure by which the case was resolved. The lodestar figure for Winebrake & Santillo would then be $23,565.60, and the lodestar figure for Joseph, Greenwald & Laake would be $56,676.82.

### C. Excessive, Redundant and Unnecessary Time Entries

Defendants argue that there are seven examples of excessive, redundant and otherwise unnecessary time entries that should be subtracted from the lodestar figure. Defendants first argue that Plaintiffs should not recover for two attorneys attending the pre-suit meeting with clients. ECF No. 42 at 11. Rule 2(d) of Appendix B of the Local Rules provides that:

> Generally, only one lawyer is to be compensated for client, third party and intra-office conferences . . . . [However] [c]ompensation may be paid for the attendance of more than one lawyer where justified for specific purposes such as periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation.

4

In a class action with numerous clients, conferences with both counsel present, may well be necessary to develop and maintain a litigation strategy. *See Kabore v. Anchor Staffing, Inc.*, 2012 U.S. Dist. LEXIS 149761 at *17 (D. Md. Oct. 17, 2012) ("Internal meetings are particularly important in class actions such as this one, which involved 72 Plaintiffs and a formal discovery process."). The court should not reduce the fees for this preliminary meeting with clients.

Second, Defendants challenge the time incurred in drafting a motion to strike affirmative defenses. ECF No. 42 at 11-12. Defendants claim that a reduction is warranted "because the dispute over the three affirmative defenses could have been resolved prior to the actual filing of the motion to strike had Mr. Markovitz or Mr. Santillo simply called Defendants' counsel and offered the compromise they subsequently proposed . . . ." ECF No. 42 at 12. It appears, however, that once the initial motion was filed, Defendants also could have proposed the agreement ultimately reached. Under these circumstances, the court should award half of the fees sought for this motion, reducing Mr. Santillo's total award by $200 and Joseph, Greenwald and Laake's total award by $3,137.50.

Third, Defendants argue that Plaintiffs' counsel should not recover for the time spent preparing the settlement letter and damages model for the mediation with Magistrate Judge Connelly. ECF No. 42 at 13. In *Kabore*, Defendants challenged fees related to a memorandum in support of a motion for summary judgment that Plaintiffs never filed because the case ended in settlement. *Id.* at *20. The court concluded that Plaintiffs could recover fees related to the memorandum, reasoning that "the memorandum in support of the motion was provided to Judge Gesner in connection with the settlement conference and may have played a role in the resolution of the case or the terms of the settlement agreement." *Id.* at *20-21. Moreover, creation of the

5

damages model was necessary because Defendants did not keep proper timekeeping and payroll records. Accordingly, the fees related to preparation for the settlement conference should not be reduced.

Fourth, Defendants contend that both Mr. Santillo and Mr. Markovitz should not recover fees for attending the settlement conference. Defendants cite Local Rule 2(c) in Appendix B, which provides that "[o]nly one lawyer for each party shall be compensated for attending hearings." Plaintiffs respond that "[t]he attendance of both Attorney Markovitz and Attorney Santillo was necessary due to the complexity and scope of this case, as well as Attorney Markovitz's knowledge of the local jurisdiction and familiarity with Named Plaintiff Taj Grayson." ECF No. 43 at 12. Here, the case was not overly complex and Plaintiffs have otherwise failed to explain why one attorney could not have handled the settlement conference. *See Essex v. Randall*, 2006 U.S. Dist. LEXIS 682 at *12 (D. Md. Jan. 11, 2006). Accordingly, $3,200 (12.8 hours) should be deducted from Winebrake & Santillo, which lowers its award from $23,365.60 to $20,165.60.

Fifth, Defendants challenge time entries for phone calls between attorneys. ECF No. 42 at 13-14. Defendants argue that such phone calls were unnecessary, especially for two attorneys who claim to be experienced in FLSA litigation. This issue was recently addressed in *Chapman v. Ourisman Chevrolet Co.*, 2011 U.S. Dist. LEXIS 73708 (D. Md. July 1, 2011). The court stated:

> The question of whether two attorneys who are not in the same firm can bill for telephone conferences between themselves specifically has not been addressed in the Fourth Circuit. However, the Court's Rules and Guidelines for Determining Attorney's Fees leaves open the possibility for two attorneys to be compensated when work includes "periodic conferences of defined duration held for the purpose of work organization, strategy and delegation of tasks." *See* Loc. R. App. B(2)(d) (D. Md. July 2001) ("Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights and Discrimination Cases"). Thus, for

> this type of work, this Court is not required to impose a downward adjustment for calls which both attorneys billed, when the calls concerned organizing, strategizing, and delegating.
>
> However, duplicative billing is not allowed for substantive work. The "district court [is] in the best position to determine whether the efforts of the two attorneys were duplicative." *Daly* [*v. Hill*], 790 F.2d at 1080. "[A] reduction for redundant hours is warranted only if the attorneys are unreasonably doing the same work." [*ACLU v.*] *Barnes*, 168 F.3d at 432. "[P]roperly exercised billing judgment includes reductions in hours billed for attorneys of lesser skill and experience." *Spell* [*v. McDaniel*], 852 F.2d 762, 771 (4th Cir. 1988) (citing *Hensley* [*v. Eckerhart*], 461 U.S. at 434).

*Id.* at *49-50. Defendants do not point to, nor does the court find, telephone conversations between counsel involving substantive work as opposed to organizing, strategizing, and delegating. For example, the first few time entries cited by Defendants state that Mr. Markovitz participated in a "[c]all with [Mr. Santillo] regarding interview with potential client," a "[c]all with [Mr. Santillo] re: class action claims and strategy," and a "call with [Mr. Santillo] re: interview with other potential opt-ins." These entries suggest that Mr. Markovitz and Mr. Santillo were speaking to each other about organizational and strategic matters. A downward adjustment is not warranted.

Sixth, Defendants contend that Plaintiffs' counsel cannot collect fees relating to time entries that are not sufficiently detailed. Defendants argue that entries such as "VM to potential client," "Read MD APP Decision," and "Read Declaration from Cal. Case and email exchange with co-counsel," do not contain enough detail to justify compensation. A time sheet is sufficiently detailed if it "consists of an itemized listing of hours and expenses and a short description for each entry explaining how the time was spent." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 2011 U.S. Dist. LEXIS 156673 at *10 (D. Md. Jan. 24, 2011). The applicant need not "submit minutely detailed records in support of a fee request; rather, the emphasis is on whether there is sufficient detail." *Id.* at *11. These disputed entries contain sufficient detail to justify

7

the award of attorneys' fees. However, Defendants also point to entries that, because of heavy redactions, leave the court with very little justification for the fee. Entries which simply state "Call," or "Call with," or "Call . . . questions about the lawsuit," (entries 51, 52, 72, 74, 75, 77, 152 and 153) are insufficient. The court should deduct $1,410 (4.7 hours) for these calls, which lowers the Joseph, Greenwald & Laake fee award from $53,539.32 to $52,129.32.

Seventh, Defendants argue that certain time entries describe work that is unrelated to the Plaintiffs' claims in this matter. Defendants point to entries related to Barry Wallihan and Shane Cannon, opt-in Plaintiffs who withdrew from the litigation, Jerome Berry and an individual named Klarissa. Plaintiffs explained that Mr. Berry provided information relating to the rules and regulations governing the Plaintiffs at issue in this case, but have failed to explain why they should receive compensation for work related to Mr. Wallihan, Mr. Cannon or Klarissa. Accordingly, $157.00 (fees relating to time entries 144, 145, 157 and 161) will be deducted from the fee award of Winebrake & Santillo for a new award of $20,008.60.

**D. Conclusion**

For the reasons stated above, it is recommended that the court award Plaintiffs costs in the undisputed amount of $1,768.15, fees to Winebrake & Santillo in the amount of $20,008.60, and fees to Joseph, Greenwald & Laake in the amount of $52,129.32, for a total award of $72,137.92.

Date: May 9, 2013               /s/
                        JILLYN K. SCHULZE
                        United States Magistrate Judge